UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| MOUNTAIN MOTORSPORTS PAVING AND CONSTRUCTION LLC,<br><br>Plaintiff,<br><br>v.<br><br>YAMAHA MOTOR CORPORATION, U.S.A.,<br><br>Defendant. | Civil No. 14-76-ART<br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Litigation is almost never a smooth journey. The first bump in the road to a judgment often comes in the form of a motion to dismiss. A plaintiff can usually navigate around this hurdle by pleading sufficient facts to state a claim. Not so in this case involving a local dealer of motorcycles and all-terrain vehicles. Because the dealer failed to provide sufficient facts to state plausible claims for relief in its complaint, the Court must apply the brakes to part of this litigation.

## BACKGROUND

Plaintiff Mountain Motorsports Paving and Construction, LLC ("Mountain") is a Kentucky limited liability company dealing in Yamaha brand vehicles. R. 14 ¶ 1 (Amended Complaint). For years, Mountain sold Yamaha's all-terrain vehicles (ATVs), utility vehicles, motorcycles, motor scooters, and other products in and around the Prestonsburg area. *Id.* ¶ 4; *see also* R. 1-2 at 2. During this time, Mountain operated pursuant to the terms of a dealer

agreement with distributor Yamaha Motor Corporation ("Yamaha"). R. 1-2. The agreement selected California law to govern the contract. *See* R. 1-2 ¶ 9.5.

The relationship between the two businesses soon took a turn for the worse. Following a theft at the dealership, Mountain claimed that Yamaha improperly charged payments for the stolen vehicles, incorrectly computed fees, and forced Mountain to dramatically increase its credit line to continue operating the franchise. R. 14 ¶¶ 6, 10, 11, 12. Mountain also claims that Yamaha failed to reimburse the dealership after suspending its sale of certain vehicles. *Id.* ¶ 14. Mountain alleges that, to add insult to injury, Yamaha unreasonably required the dealership to maintain financing from General Electric ("GE"), despite GE's alleged accounting failures. *Id.* ¶ 17.

Fed up with Yamaha and GE, Mountain sought alternative lenders. Yamaha informed Mountain that its search for alternative lenders amounted to a breach of the dealer agreement. *Id.* ¶ 18. But after some negotiation, Yamaha agreed to allow Mountain to resell the dealership. *Id.* ¶ 19. Mountain expected Yamaha to repurchase Mountain's inventory and transfer the franchise to Mountain's successors. *Id.* ¶ 19. However, Mountain claims that Yamaha actually obstructed its efforts to resell the stock of vehicles and transfer the business, which led Mountain to be named in an action for replevin. *Id.* ¶¶ 19, 20.

Mountain filed and subsequently amended a complaint in this Court. *See* R. 1; R. 14. Mountain seeks to recover monetary damages from Yamaha under eight causes of action sounding in contract, tort, and Kentucky statute. Although the Court has jurisdiction over the complaint under Federal Rule of Civil Procedure 12(b)(1), it cannot hear all the claims therein. Why? Because Mountain failed to adequately plead a legal claim for some of its

causes of action. For the reasons discussed below, Yamaha's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is granted in part and denied in part.

## DISCUSSION

The standard for evaluating a motion to dismiss differs for motions brought under Rule 12(b)(1) and those brought under Rule 12(b)(6). When considering a motion to dismiss under Rule 12(b)(1), a federal court determines whether it can exercise its limited jurisdiction over the action. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (characterizing federal courts as courts of limited jurisdiction). Federal courts have jurisdiction over civil actions between citizens of different states in which the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

On the other hand, a court examines whether the plaintiff has adequately stated a claim for legal relief when evaluating a motion to dismiss under Rule 12(b)(6). In its review, the court must accept all well-pled allegations as true and must determine whether they plausibly state a claim for relief under the law. *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 457 (6th Cir. 2013); *see also Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring a complaint to state a claim for relief that is "plausible on its face" in order to survive a motion to dismiss).

Mountain provided sufficient information to demonstrate diversity of citizenship and an adequate amount-in-controversy to survive Yamaha's motion to dismiss under Rule 12(b)(1). But because Mountain failed to establish elements in some of its causes of action and adequately plead viable claims for legal relief, its complaint must be dismissed in part under Rule 12(b)(6).

### I. Mountain Provided Sufficient Information to Demonstrate That This Court Has Jurisdiction Under 28 U.S.C. § 1332.

As a plaintiff bringing a lawsuit in federal court based on diversity jurisdiction, Mountain bears the burden of demonstrating that the parties are citizens of different states. *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 559 (6th Cir. 2010) (citation omitted). And Mountain, as a limited liability company, is considered a citizen of each state in which its members are citizens. *See Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) (citation omitted). Yamaha argues that because Mountain—a limited liability company—claimed Kentucky citizenship on the basis of its place of organization instead of the citizenship of its members, its jurisdictional statement is deficient. R. 17-1 at 7. Yamaha is correct. But this deficiency does not warrant dismissing the complaint. Why? Because Mountain responded to the motion by asserting that its sole member is a citizen of Kentucky and providing a supporting affidavit. R. 19 at 11; R. 19-1. And defective allegations of jurisdiction may be amended by filing an amendment setting forth facts demonstrating diversity jurisdiction. *See Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 F. App'x 731, 732–33 (6th Cir. 2002) (referring to 28 U.S.C. § 1653). Accordingly, Mountain has shown facts that indicate that this case meets the citizenship requirement of 28 U.S.C. § 1332. As Mountain also asserts that the "matter in controversy exceeds the sum value of $75,000," R. 14 ¶ 3, Mountain's complaint survives Yamaha's motion to dismiss under Rule 12(b)(1). *See Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001) (internal quotation marks omitted) (noting that it is sufficient to plead the amount in controversy requirement with a "clear allegation[] . . . that the case involve[s] a sum well in excess of the $75,000 minimum").

## II. Only Some of Mountain's Claims May Overcome A Motion to Dismiss Under Rule 12(b)(6).

Mountain must plead sufficient facts in its complaint to plausibly state a claim for relief under applicable law in order to survive a motion to dismiss under Rule 12(b)(6). *See Glazer*, 704 F.3d at 457. And the Kentucky Supreme Court determines the "applicable law." *Nat'l Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 150 (6th Cir. 1992) (holding that federal courts exercising diversity jurisdiction must follow the choice of law principles articulated by the highest court in the state in which they sit).

So what law governs in this Kentucky case? The answer varies based on the cause of action. In tort cases, the Kentucky Supreme Court applies the law of the state to which the action has any significant contacts. *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972). Because the business was located in Kentucky and the plaintiff allegedly experienced injuries here, the parties agree that Kentucky law governs Mountain's tort claims. R. 17-1 at 6; R. 19 at 23–27.

But the parties dispute which law governs Mountain's contract claims. Although the contract contains a choice-of-law provision selecting California law, the Kentucky Supreme Court has not always found such terms to be binding. *See, e.g.*, *Breeding v. Mass. Indem. & Life Ins. Co.*, 633 S.W.2d 717, 719 (Ky. 1982) (finding that Kentucky had "the most significant relationship" to an insurance contract purchased in the state by a Kentucky resident and where the claim arose in Kentucky). Instead, the Kentucky Supreme Court follows § 188 of the Restatement (Second) of Conflict of Laws to resolve choice-of-law issues that arise in contract disputes. *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009).

Under this provision, the law of the state having the *most* significant contacts to the transaction and the parties applies. Restatement (Second) Conflict of Laws § 188(1) (1971).

Kentucky courts applying the most-significant-contacts test first examine whether the chosen state has no substantial relationship to the parties or whether the application of the choice-of-law provision would be contrary to a fundamental policy of a state. *See* Restatement (Second) Conflict of Laws § 188(2) (1971) (referring to Restatement (Second) Conflict of Laws § 187 (1971)). The Kentucky Supreme Court found the chosen state to have no relationship to the parties where the choice of law provision was part of a form contract prepared by a "nationwide corporation having franchises among the fifty states." *Breeding*, 633 S.W.2d at 719; *see also Schnuerle v. Insight Commc'ns, Co.*, 376 S.W.3d 561, 567 (Ky. 2012) (noting that, although a contract contained a choice of law provision selecting New York law, the state had "no discernible connection or interest at all in the subject matter of the litigation"). The dealer agreement is like the contracts in *Breeding* and *Schnuerle*. The agreement is a form franchise agreement prepared by Yamaha, a California corporation, with dealerships located in other states. *See* R. 1-2.

Several of the remaining factors in the most-significant-contacts test rest in equipoise. *See* Restatement (Second) Conflict of Laws § 188 (listing as factors to consider: (a) The place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties). Here, the parties did not provide information about where the contract was negotiated or signed, and they each reside and conduct business in different states. However, Mountain performed the contract by operating the dealership in Kentucky. The subject matter of the contract—the

dealership—is also in Kentucky. What ultimately tips the balance in favor of Kentucky law is the state's "substantial interest in the protection of its residents in the area of commercial transactions." *Schnuerle*, 376 S.W.3d at 567. For these reasons, Kentucky law governs the dealer agreement.[1]

### A. Mountain's Claims Sounding in Contract Survive a Motion to Dismiss.

#### 1) Breach of Contract

Under Kentucky law, Mountain must support its claims for breach of contract with sufficient facts to establish the existence of "the contract, the breach, and . . . the loss or damage by reason of the breach." *Fannin v. Commercial Credit Corp.*, 249 S.W.2d 826, 827 (Ky. 1952); *see also Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001) (noting that a claim for breach must show the existence and the breach of a contractually imposed duty) (citing *Strong v. Louisville & Nashville R. Co.*, 43 S.W.2d 11, 13 (Ky. 1931)). Mountain includes sufficient facts in its complaint which when taken as true, show that it entered into a contract with Yamaha. *See* R. 1 ¶ 21.

Mountain's claim stalls at the next element. Mountain objects to a number of Yamaha's actions, but does not actually point to specific contractual provisions that prohibit the conduct. *Id.* ¶¶ 23, 24 (claiming that Yamaha improperly terminated the parties' relationship even when Mountain maintained adequate financing, failed to provide account information, and seized money due to Mountain). And it is a basic rule of Kentucky contract

---

[1] In support of its argument that Kentucky law applies, Mountain claims that Yamaha failed to provide required notice under California law about Mountain's right to protest the termination of its dealer agreement. *See* R. 19 at 14–15. According to Mountain, this fact shows that Yamaha "wants to choose only parts of each state's law in an effort to gain an advantage over their [sic] dealers." *Id.* at 15. Regardless of whether Mountain's allegation is true, this fact does not affect the most-significant-contacts test that the Kentucky Supreme Court uses to determine which state's law governs a contract dispute. Accordingly, the Court will not consider Yamaha's alleged previous noncompliance with California law in its choice-of-law analysis.

law that a breach must implicate some "duty *imposed by the contract.*" *Strong*, 43 S.W.2d at 13 (emphasis added).

But when deciding a motion to dismiss, a court may also consider exhibits to which a plaintiff refers in the complaint, so long as they are central to the claim. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001). Mountain incorporated the dealer agreement as an exhibit to its pleading. R. 1-2. As this agreement lies at the heart of the parties' dispute, the Court may determine whether its provisions show that Yamaha breached a duty. The agreement notes that Yamaha may terminate the contract immediately if Mountain fails to maintain adequate lines of credit. *See* R. 1-2 ¶ 6.2(e). Because Mountain contests that it failed to maintain adequate lines of credit, and because the Court takes that fact to be true for the purposes of evaluating the motion to dismiss, Mountain's claim for breach survives Yamaha's motion to dismiss. However, the dealer agreement does not identify any commitment by Yamaha to provide accurate information or to not seize Mountain's money. Accordingly, those allegations are not sufficient grounds to show that Yamaha breached the parties' contract.

In its response, Mountain asserts new facts and points to new provisions in the contract that Yamaha allegedly breached. *See* R. 19 at 16–17. A district court cannot, however, look to a plaintiff's arguments in its briefing to determine whether the complaint states a claim for relief. *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012) ("When presented with such a motion [to dismiss], courts consider whether the complaint states a claim upon which relief could be granted, not whether the plaintiff has stated—or could state—such a claim elsewhere." (emphasis omitted)). Accordingly, the

Court does not rely on the new facts and claims in Mountain's briefs to evaluate whether its complaint survives a motion to dismiss.

### 2) Breach of the Implied Covenant of Good Faith and Fair Dealing

Every contract contains an implied covenant of good faith and fair dealing. *Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991). Such a covenant imposes on parties a duty to do everything necessary to carry out the contract. *Id.*; *see also RAM Eng'g & Constr., Inc. v. Univ. of Louisville*, 127 S.W.3d 579, 585 (Ky. 2003); *Ligon v. Parr*, 471 S.W.2d 1, 3 (Ky. 1971) (noting that the covenant of good faith and fair dealing prevents one party from "impairing the right of another party to receive the fruits of the contract" (internal quotation marks omitted)). Under Kentucky law, a party can violate the implied covenant of good faith and fair dealing even without breaching any specific provisions of a contract. *See Gresh v. Waste Servs. of Am., Inc.*, 311 F. App'x 766, 776 (6th Cir. 2009).

Mountain alleges that Yamaha provided false information to Mountain's financing institution, a third party, which resulted in Mountain incurring excessive charges, penalties fees, and damages. R. 14 ¶¶ 27, 29. Read in the light most favorable to Mountain, this allegation supports a plausible claim that Yamaha "impaired" Mountain's right to recover its complete profits—the "fruits" of the contract. *See Ligon*, 471 S.W.2d at 3. Accordingly, Mountain's claim that Yamaha breached the covenant of good faith and fair dealing in the dealer agreement survives the motion to dismiss.

### B. Mountain Did Not Allege Sufficient Facts to State Plausible Claims for Relief Sounding In Tort.

#### 1) Misrepresentation

Kentucky adopts the Restatement (Second) of Torts § 552, which outlines the elements of negligent misrepresentation. *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 580 (Ky. 2004) (identifying as elements: (1) the provision of false information for the guidance of others in their business transactions, (2) in the course of a business, profession, employment, or any other transaction in which there exists a pecuniary interest, (3) after failing to exercise reasonable care or competence in obtaining or communicating the information, and (4) justifiable reliance upon the information causing pecuniary loss).

But Mountain does not state facts to establish all of these elements. *See* R. 14 ¶¶ 30–32. Rather, Mountain makes broad, conclusory statements to establish grounds for relief. *See id.* ¶ 30 ("Defendant negligently and/or recklessly misrepresented the reasons for terminating the Dealer Agreement."); *id.* ¶ 31 ("Defendant has negligently and/or recklessly misrepresented . . . that it would not interfere in the selling of the dealership."). The Court need not "accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, Mountain's pleading amounts to no more than "[t]hreadbare recitals" of some of the elements of this cause of action, which the Supreme Court and the Sixth Circuit have held to be insufficient to overcome a motion to dismiss. *Id.*; *see also Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) (holding that legal conclusions "masquerading as factual allegations" will not suffice to survive a motion to

dismiss). Such conclusory claims are wholly inadequate vehicles for guiding Mountain's misrepresentation claims past Yamaha's motion to dismiss.

### 2) Tortious Interference with Contract and Prospective Business Advantage.

Mountain pleads two similar claims in counts five and six of its complaint: One for "interference with business relations" and another for intentional interference with prospective economic advantage. R. 14 ¶¶ 33–40. Kentucky law follows the Restatement (Second) of Torts for tortious interference claims. *See Nat'l Collegiate Athletic Ass'n By & Through Bellarmine College v. Hornung*, 754 S.W.2d 855, 857 (Ky. 1988) (adopting Restatement (Second) of Torts § 766B for claims of tortious interference with prospective contractual relations); *Carmichael-Lynch-Nolan Adver. Agency, Inc. v. Bennett & Assocs., Inc.*, 561 S.W.2d 99, 102 (Ky. Ct. App. 1977) (adopting Restatement (Second) of Torts § 766 for claims of interference with existing contract rights).

In an action for tortious interference with prospective economic advantage, a plaintiff must show facts that support the claim that the defendant (1) intentionally and improperly interfered with (2) another's prospective contractual relation by (3) either inducing a third person not to enter or discontinue the prospective relation or by preventing the other from continuing the prospective relation and (4) causing pecuniary harm resulting from the loss of the benefits of the relation. Restatement (Second) of Torts § 766B. To prevail under this theory of liability, the "party seeking recovery must show malice or some significantly wrongful conduct." *Hornung*, 754 S.W.2d at 859.

Mountain references some "potential prospects" who expressed interest in purchasing the dealership. R. 14 ¶ 38. Mountain also states that Yamaha intentionally interfered with

11

the prospective contract with those parties by failing to communicate openly and by breaching the dealer agreement. Although Mountain refers only to its "potential prospects" in a letter to Yamaha attached as an exhibit to the complaint, the Court can properly consider such facts when deciding a motion to dismiss because the letter is central to Mountain's interference claims. *See Amini*, 259 F.3d at 502.

But Mountain's interference claim comes to a halt at the final element. Mountain does not state whether the potential prospects failed to enter or discontinued the prospective relation, or whether Yamaha's actions somehow prevented Mountain from continuing the relation.[2] The Court can only speculate as to how the anticipated deal fell apart. But to survive a motion to dismiss, the plaintiff's complaint must allege each element of the cause of action with sufficient detail "to raise a right to relief above the speculative level." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011). By failing to articulate facts to prove the final element of the claim, Mountain's claim for tortious interference with a prospective economic advantage cannot overcome Yamaha's motion to dismiss.

To the extent that either of Mountain's claims actually seeks relief for interference with existing contract rights, such a claim cannot survive a motion to dismiss either. In an action for interference with contract rights, a plaintiff must show facts that support a claim that the defendant (1) intentionally and improperly interfered with (2) the performance of a contract by (3) inducing the third person not to perform the contract. Restatement (Second)

---

[2] Mountain presents alternative facts to support a claim for intentional interference with prospective economic advantage in its response to the motion to dismiss. *See* R. 19 at 25–26. But the Court does not consider facts that may support the plaintiff's claim presented outside the complaint and its exhibits. *See Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012).

of Torts § 766. Here, Mountain provides no facts to show that Mountain had a contract with any potential purchasers of the dealership. Accordingly, Mountain provided insufficient information to state a claim for interference with an existing contractual relation.

### 3) Unlawful Restraint of Trade

Mountain alleges that Yamaha engaged in an "unlawful restraint of trade." R. 14 ¶ 41. Kentucky law has a common law action for restraint of trade. *See Love v. Kozy Theater Co.*, 236 S.W. 243, 246 (Ky. 1921) (identifying the elements as (1) any agreement, pool, trust, combination or monopoly (2) created or entered into by any corporation, partnership or association of persons (3) for the purpose of suppressing competition, controlling the market, or regulating or fixing the price of any species of property). But Mountain did not plead any facts in its complaint to indicate that Yamaha met any of these elements. *See* R. 14 ¶ 41 (alleging that Yamaha's conduct has prohibited Mountain "from securing purchasers for the dealership thereby constituting an unlawful restraint of trade"). Nowhere does Mountain claim that Yamaha entered into any agreement, pool, combination, or monopoly. Accordingly, Mountain's "threadbare" recitation of the legal elements of the claim—if even that—does not weather Yamaha's motion to dismiss. *Iqbal*, 556 U.S. at 678.

### C. Mountain Did Not Plead Sufficient Facts to Show that it Merits Relief Under Kentucky Statutes Governing the Retail Sales of Farm Equipment.

Mountain claims that Yamaha violated two statutes governing the retail sale of farm equipment in Kentucky. *See* R. 14 ¶¶ 26, 43 (alleging violations of Ky. Rev. Stat. §§ 365.805, 365.831). Section 365.805 requires suppliers who enter into agreements with retailers to repurchase inventory from the retailers upon terminating the agreement. And section 365.831 prohibits such suppliers from terminating the agreement without good cause.

But it is not clear that the statute even applies to Mountain and Yamaha's relationship. And Mountain does not state any facts to show that Yamaha was a supplier, that Mountain was a retailer, or that Mountain possessed "inventory" as defined in the statutes. For one, the statute defines "inventory" as "farm implements, tractors, farm machinery, consumer products, utility and industrial equipment, construction and excavating equipment, and any attachments, repair parts, or superseded parts for the equipment." *See* Ky. Rev. Stat. Ann. § 365.800(3). In its complaint, Mountain merely claims that it sold "ATV's, Side by Side Vehicles, Consumer Generators, Riva motor scooters, and motorcycles." R. 14 ¶ 4. None of these products clearly falls under the terms of the statute.

Of course, Mountain could claim that one of these vehicles is a "consumer product." But a consumer product, for the purposes of sections 365.805 and 365.831, does not include the whole world of consumer products. Rather, the term is limited to those products designed for or adapted and used for "horticulture, floriculture, landscaping, grounds maintenance, or turf maintenance." Ky. Rev. Stat. Ann. § 365.800(5). And Mountain does not make such an assertion in its complaint. So the Court is left to wonder, for example, whether a "Side by Side" vehicle could possibly be used in grounds maintenance or whether consumer generators are used as industrial equipment. If so, Mountain and Yamaha would be obliged to comply with the Kentucky farm equipment statutes. Although such a conclusion is conceivable, it is Mountain's burden to "nudge[ ] [these] claims across the line from conceivable to plausible." *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013). Because Mountain failed to provide that "nudge" in its complaint, its statutory causes of action may not move past Yamaha's motion to dismiss.

## CONCLUSION

Although this Court has subject-matter jurisdiction over Mountain's complaint, it may not exercise its power to hear all of the claims therein. By failing to plead sufficient facts to establish all necessary elements of its tort and statutory causes of action, Mountain did not state plausible claims for relief. Accordingly, Yamaha's motion to dismiss, R. 17, is **GRANTED IN PART** and **DENIED IN PART.**

This the 20th day of October, 2014.

Signed By:
*Amul R. Thapar*
United States District Judge